IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HENRY MARBET,                              :
    Plaintiff,                            :
                                          :
v.                                         :        CIVIL ACTION NO. 24-CV-4724
                                          :
PA. DEPT. OF CORRECTIONS, *et al.*,        :
    Defendants.                           :

## MEMORANDUM

SCOTT, J.                                           SEPTEMBER 10, 2025

Plaintiff Henry Marbet, a convicted and sentenced state prisoner currently incarcerated at

SCI Phoenix, brings this civil action pursuant to 42 U.S.C. § 1983 based on allegations that staff

confiscated his personal property during a cell search and were deliberately indifferent to his

medical needs when they failed to replace his hearing aids. For the following reasons, the Court

will dismiss the Complaint (ECF No. 1 ("Compl.")) in part with prejudice and in part without

prejudice. Marbet will be permitted to file an amended complaint as to any claims dismissed

without prejudice.

## I.    FACTUAL ALLEGATIONS[1]

Marbet avers that he is a seventy-five-year-old inmate who "suffers from hearing loss"

and is confined to a wheelchair because of a "severe ankle/lower leg injury along with several

other serious conditions." (Compl. at 2.) He names the following Defendants: (1) the

---

[1] The factual allegations set forth in this Memorandum are taken from Marbet's Complaint.
(ECF No. 1.) The Court adopts the pagination supplied by the CM/ECF docketing system.
Grammar, spelling, and punctuation errors in quotes from Cottle's submissions are cleaned up
where necessary.

1

Pennsylvania Department of Corrections;[2] (2) four unidentified corrections officers assigned to

the security detail at SCI Phoenix (John Doe #1-4); (3) an unidentified captain of the security

detail at SCI Phoenix (John Doe #5); (4) Superintendent J. Terra; (5) Wellpath Medical;[3] (6)

"Well Path Medical Provider/On-site Director Dr. Letizio;" (7) Huner, identified in the

Complaint as the "Corrections Health Care Administrator;" (8) Sergeant Stephany; (9)

Lieutenant Everden; and (10) Correctional Officer Blue.[4]  (*Id.* at 4-5.)  Marbet asserts two

distinct claims in his Complaint.  First, he asserts that Wellpath, Huner, and Letizio (the

"Medical Defendants") violated his rights under the Eighth and Fourteenth Amendments by

failing to provide adequate medical care.[5]  (*Id.* at 5-7.)  With respect to his second claim, Marbet

avers that Stephany, Everden, Blue, and the unidentified correctional officers (collectively

---

[2] Although not separately listed in the "Parties" section of Marbet's Complaint, the Pennsylvania Department of Corrections is listed as a Defendant in the caption of the Complaint. (Compl. at 2, 4-5.)

[3] Although not separately listed as a party in the Complaint (*see* Compl. at 4-5), Marbet asserts, *inter alia*, that Wellpath "exercised a deliberate indifference" to his health. (Compl. at 2, 6, 10, 12.) Accordingly, the Court directed the Clerk of Court to add Wellpath as a Defendant on January 8, 2025. (ECF No. 8.)

[4] Although Marbet initially identifies this Defendant as Correctional Officer Blue, he avers in his statement of facts that this individual, who he refers to as "Officer Blue/Blum" will be properly identified "upon initial disclosure." (Compl. at 8.) For purposes of this Memorandum, the Court will refer to this Defendant as Correctional Officer Blue.

[5] Although Marbet cites both the Eighth and Fourteenth Amendments, the Eighth Amendment applies to his claims because he was a convicted and sentenced state prisoner at the time of the incidents described in the Complaint. *See* Compl. at 2 (acknowledging status as convicted and sentenced prisoner serving a life sentence); *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (distinguishing standards for evaluating conditions-of-confinement claims brought by convicted and sentenced prisoners under the Eighth Amendment from those brought by pretrial detainees under the Fourteenth Amendment).

referred to as the "DOC Defendants") were negligent[6] and failed to "protect/identify/inventory" his personal property in violation of the Fourteenth Amendment. (*Id.* at 7-8.)

Marbet contends that on September 1, 2022, Lt. Everden and CO Blue abruptly entered his cell in the early morning hours to perform a random cell search that was "reckless and unreasonable." (*Id.* at 8, 12.) He maintains that Officer John Doe #1 was "complicit" in the search. (*Id.* at 8.) Marbet alleges that these Defendants failed to "protect [his] minimal rights/liberty interests . . . as set forth in DC-ADM-801" and the "law of the Commonwealth." (*Id.* at 9.) He avers that Everden, Blue, and Doe #1 "completely destroy[ed]" and moved his property leaving his cell "in complete disarray."[7] (*Id.*)

After spending several hours "cleaning and arranging the cell," Marbet realized that his hearing aids were missing. (*Id.*) Marbet "immediately located" Sgt. Stephany, informed him about his missing hearing aids, and asked Stephany to phone security to have Correctional Officers John Doe #2 and #3 "search the trash/items removed and discarded" from his cell. (*Id.*) Marbet contends that no one looked for his missing hearing aids, and, as a result, he asserts that Stephany "failed to perform his duty to protect and care for [his] property." (*Id.* at 10.) On September 2, 2022, Marbet spoke to Everden about his missing hearing aids, and Everden allegedly told him that "no hearing aids were taken" during the search of Marbet's cell. (*Id.*)

---

[6] Marbet's reference to negligence does not state a constitutional claim. The United States Supreme Court has held that § 1983 claims may not be predicated on a state actor's mere negligence. *See Canton v. Harris,* 489 U.S. 378, 387 (1989) (holding that mere negligence in training cannot form basis of § 1983 liability); *Daniels v. Williams,* 474 U.S. 327, 328 (1986) (holding that official's mere negligence is not actionable under § 1983 because "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property").

[7] Marbet avers that his property was "strewn around the cell floor, upon bunks (beds overturned w/ mattresses pulled off of bunks), sheets, pillowcases removed and thrown around the cell, in a complete jumble of what appeared to be junk and trash, but in fact was [his] personal property." (Compl. at 9.)

On September 3, 2022, Marbet was seen by Dr. Kaminski in the medical department of SCI Phoenix. (*Id.*) When Marbet explained that his hearing aids could not be located, Dr. Kaminski allegedly phoned Huner and Dr. Letizio, requesting that they "replace [Marbet's] hearing aids with replacements while ordering new aids." (*Id.*) Marbet contends that although his prescription for hearing aids is "in effect until 2035," Huner and Letizio failed to replace his hearing aids despite complaints "that he was going deaf." (*Id.* at 6, 10.)

Marbet contends that the DOC Defendants failed to "properly protect and care for" his property and failed "to take any remedial steps" to locate his hearing aids. (*Id.* at 11.) He avers that these Defendants exhibited a complete disregard for his "clothing; electronics; bedding; paperwork" and personal items. (*Id.* at 7.) He also avers that they "illegally convert[ed] [his] property" and failed "to provide a 'Confiscation Slip' pursuant to DC-ADM-801." (*Id.* at 3, 7, 11.) Finally, with respect to Superintendent Terra and Doe #5, Marbet avers that they "fail[ed] to properly train and/or enforce the compliance with duty and obligation of the officers under their direct authority." (*Id.* at 11.)

Marbet contends that the Medical Defendants acted with deliberate indifference "by failing to provide adequate medical care" following his "multiple requests/pleas" for replacement hearing aids. (*Id.* at 3, 6, 12.) He claims that as a result of their deliberate indifference, he "was unable to participate in his daily/weekly programs/jobs/recreation" because "he could not hear call-outs" from prison staff. (*Id.* at 6-7.) He further avers that the Medical Defendants' actions caused him "to suffer relapse of his previously diagnosed malady of hearing loss" as well as a loss of balance, equilibrium, and quality of life. (*Id.* at 3.) Marbet seeks monetary damages in excess of $225,000. (*Id.* at 13.)

4

## II.    STANDARD OF REVIEW

Although Marbet has paid the filing fee in full, the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

Whether a complaint fails to state a claim is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At the screening stage, the Court accepts the facts alleged in the *pro se* complaint as true, draws all reasonable inferences in the plaintiff's favor, and considers whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Additionally, the Court must review any claims over which subject matter jurisdiction is lacking. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v.*

5

*Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte"). Because Marbet is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

Marbet brings this civil action pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). For the following reasons, Marbet's claims are not plausible.

### A.    Claims Pertaining to the September 1, 2022 Cell Search

#### 1.    The DOC and its Employees in their Official Capacities

Marbet asserts claims seeking money damages against the DOC and has named DOC employees in their official capacities. (Compl. at 2.) The claims against the DOC and the official capacity claims against its employees must be dismissed because the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v.*

6

*Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Moreover, the DOC is not considered a "person" for purposes of § 1983. *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983). Accordingly, these claims are not plausible and will be dismissed with prejudice.

### 2.    Cell Search and Loss of Personal Property

The fact that Marbet's cell was searched does not allege a plausible claim because "prisoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."); *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (explaining that the Fourth Amendment "does not protect an inmate from the seizure and destruction of his property").

The allegation that Marbet's property was destroyed or disturbed by prison officials during the cell search is not a plausible Fourteenth Amendment due process claim. Marbet seeks to bring claims based on the loss of personal property,[8] including his hearing aids, clothing,

---

[8] Aside from allegations concerning the missing hearing aids, it is unclear to the Court whether Marbet was missing any other personal property. Marbet avers generally that his property was

7

cosmetics, legal work, electronics, bedding, rag rugs, shoes, sneakers, toiletries, clerical items, family photos, and letters. (Compl. at 7, 9.) Unauthorized intentional deprivations of property "[do] not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligent acts of officials causing unintentional loss of property do not violate due process). A correctional facility's grievance procedure provides an adequate postdeprivation remedy for intentional deprivations of property by correctional employees. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (holding that prison grievance system provides adequate post-deprivation remedy). Accordingly, Marbet's claim is not plausible and will be dismissed with prejudice because he had an adequate remedy for the deprivation of his property through the prison grievance system. *See, e.g.*, *Mbewe v. Delbalso*, No. 23-2054, 2024 WL 510500, at \*3 (3d Cir. Feb. 9, 2024) (*per curiam*) ("The prison grievance procedure provides an adequate post-deprivation remedy, and the existence of this post-deprivation remedy forecloses [plaintiff's] due process deprivation of property claim" (citation omitted)); *Ransome v. Longstreth*, No. 23-1726, 2023 WL 6122139, at \*2 (3d Cir. Sept. 19, 2023) (*per curiam*) (existence of prison grievance process precluded due process claim, even where prisoner alleged violations of the grievance policy). "Even if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy." *Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d Cir. 2019) (*per curiam*) (citing 42 Pa. Cons. Stat. Ann. § 8522(b)(3)); *see also Lawson v. Ferguson*, No. 22-

---

"completely destroy[ed]," moved, and "thrown around the cell, in a complete jumble of what appeared to be junk and trash," but he does not specify what, if any, other property was destroyed or missing. (Compl. at 9.)

2365, 2023 WL 2770820, at *3 n.3 (3d Cir. Apr. 4, 2023) (*per curiam*) ("Even if the prison's grievance procedures were inadequate to address Lawson's claims, state tort law could serve as an adequate post-deprivation remedy."); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property).

Marbet also alleges a failure to follow a policy in the inmate handbook. (*See* Compl. at 3, 7, 12.) This claim fails because many courts have held that "corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures." *Bowman v. Wetzel*, No. 20-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (citing cases); *see also Curry v. McCann*, No. 18-5444, 2019 WL 77441, at *7 (E.D. Pa. Jan. 2, 2019) ("Even if Curry was asserting a claim against C.O. McCann based on this questioning, 'a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.'") (*citing Laufgas v. Speziale*, No. 04-1697, 2006 WL 2528009, at *7 n.7 (D.N.J. Aug. 31, 2006)). *See also Hernandez-Santana v. Little*, No. 24-6447, 2025 WL 2538435, at *5 (E.D. Pa. Sept. 3, 2025) ("a violation of internal prison procedures does not create a constitutional violation").

### 3.    Loss of Legal Work

Although it is not entirely clear, Marbet may also assert a claim based on lost or destroyed "legal work." (Compl. at 9.) This allegation is properly analyzed as an "access-to-the-courts" claim. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "However, prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Id.*; *Shane v. Fauver*, 209 F. App'x 87, 89 (3d Cir. 2006) (*per curiam*) ("[T]he actual injury requirement is not met by every type of frustrated legal

9

claim; constitutional protections are applied only to a prisoner's direct or collateral attack on his or her sentence, or challenges to prison conditions"); *see also Lewis v. Casey*, 518 U.S. 343, 355 (1996) (the inability to litigate claims other than an attack on a sentence or conditions of confinements "is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration").

"A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.* Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*).

Marbet fails to assert in the Complaint that the loss of his legal work, if any, caused an actual injury traceable to the loss. Accordingly, his claim is not plausible and will be dismissed with leave to amend if he can allege additional facts to state a plausible claim.

####    4.      Grievances and Failure to Investigate

To the extent that Marbet asserts claims that any of the DOC Defendants failed to respond to his grievance and investigate the loss of his hearing aids, any such claims are not plausible.  Claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).  Accordingly, allegations predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim.  *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

Additionally, "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (quotations omitted); *see also Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (*per curiam*) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual.").  For these reasons, the alleged failure of Stephany or Does #2 and #3 to investigate the loss of Marbet's hearing aids cannot state a separate plausible § 1983 claim and

11

will be dismissed with prejudice.

### 5.    Supervisory Liability

It appears that Marbet names Superintendent Terra and John Doe #5, the "Captain of SCI-PHX Security Detail" (*see* Compl. at 4), as Defendants merely because they each hold a position of supervisory authority at SCI Phoenix.  In fact, the only allegation in the Complaint with respect to these Defendants is Marbet's assertion that they "fail[ed] to properly train and/or enforce the compliance with duty and obligation of the officers under their direct authority." (*Id.* at 11.)

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'") (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).  Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *See, e.g., Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d. Cir. Nov. 28, 2022) (*per curiam*).

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and

12

maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.*

(quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.

2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he

or she participated in violating the plaintiff's rights, directed others to violate them, or, as the

person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional

conduct." *Chavarriaga*, 806 F.3d at 227.

Marbet has failed to allege that Terra or Doe #5 established and maintained a policy,

practice, or custom with deliberate indifference that caused constitutional harm, and he has failed

to allege these Defendants' personal involvement in any alleged underlying constitutional

violation. Accordingly, the individual capacity supervisory liability claims against Terra and

Doe #5 will be dismissed without prejudice.

### B. Deliberate Indifference to Serious Medical Needs

#### 1. Wellpath and its Employees in their Official Capacities

A private corporation like Wellpath that is under contract to provide medical services at a

jail or prison may be liable under § 1983 in certain circumstances. The United States Court of

Appeals for the Third Circuit has held that "a private health company providing services to

inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat

superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir.

2015) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)

(applying *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978) to claims against medical

contractor)). Rather, to hold a prison medical provider like Wellpath liable for a constitutional

violation under § 1983, a plaintiff must allege the provider had "a relevant . . . policy or custom,

and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d 575, 583-

84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404

(1997)).[9]

"To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman*, 914 F.3d at 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). Allegations that simply paraphrase these standards are too vague and generalized to support a plausible claim. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases); *see also Brown v. Delaware Cnty. Prison Bd. of Inspectors*, 741 F. App'x 135, 138 (3d Cir. 2018) (*per curiam*) ("Brown's vague and conclusory allegation that the defendants had a policy or custom of

---

[9] "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

A plaintiff may also state a basis for liability against an entity like Wellpath by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019). Marbet has not alleged that he was injured due to a failure to supervise, train, or discipline.

14

'fail[ing] to provide an adequate level of security staffing,' is insufficient to state a claim.").

Marbet has not tied his allegations of deliberate indifference to a custom or policy of Wellpath. In fact, he has not referenced any policy or custom by Wellpath in his Complaint. Accordingly, the allegations are insufficient to allege a plausible claim against Wellpath.[10] *Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at \*3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (citations and quotations omitted)).

To the extent Marbet has named Wellpath employees as Defendants in their official capacities, any such claims are duplicative of the claim against Wellpath and will be dismissed with prejudice. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the

---

[10] While the claim against Wellpath will be dismissed without prejudice, the Court notes that any liability against Wellpath in this Court is uncertain in light Wellpath's discharge from liability by the United States Bankruptcy Court for the Southern District of Texas, Houston Division, for claims that arose prior to November 11, 2024. *See In Re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tx.) (Bankr. Doc. Nos. 2596, 2679, 2680) ); *see also* 11 U.S.C. § 524(a)(2) ("A discharge in a [Chapter 11 bankruptcy] case . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.").

government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

### 2.    Dr. Letizio and Administrator Huner

Marbet contends that Dr. Letizio and Administrator Huner were deliberately indifferent to his serious medical needs by failing to provide him with replacement hearing aids. (Compl. at 3, 6-7.) To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.") (internal citations and quotations omitted). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004);

16

*Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*).

The failure to provide basic corrective devices may amount to deliberate indifference to a serious medical need. *See Cummings v. Roberts,* 628 F.2d 1065, 1068 (8th Cir. 1980) (prison's alleged failure to give an inmate a wheelchair after he suffered a back injury was sufficient to support an Eighth Amendment claim); *Newman v. Alabama,* 503 F.2d 1320, 1331 (5th Cir. 1974) (noting that a prison's alleged failure to provide "eyeglasses and prosthetic devices" contributed to an Eighth Amendment claim). Several courts have held that hearing aids fall within the category of corrective devices, the deprivation of which could give rise to an Eighth Amendment claim. *See Large v. Washington Cnty. Det. Ctr.,* 915 F.2d 1564, at *2 (4th Cir. 1990) (*per curiam*) (unpublished table decision) (holding that "under appropriate circumstances, the refusal to supply a hearing aid to a convict could constitute deliberate indifference to a serious medical need"); *Gilmore v. Hodges,* 738 F.3d 266, 275-76 (11th Cir. 2013) (holding that the denial of a hearing aid to an inmate could form the basis of an Eighth Amendment claim because "[t]he ability to hear is a basic human need materially affecting daily activity and a substantial hearing impairment plainly requires medical treatment by a physician"); *Cooper v. Johnson,* 255 F. App'x 891, 892 (5th Cir. 2007) (*per curiam*) (prisoner who suffered from tinnitus that was treatable with a hearing aid had adequately pleaded an Eighth Amendment claim when he was denied a hearing aid based on the prison's policy of not providing one if the inmate could hear out of one ear); *Wheeler v. Butler,* 209 F. App'x 14, 15 (2d Cir. 2006) (unpublished) (holding that where a prisoner alleged that he had a severe hearing impairment that had been classified by the prison as a physical handicap, and the prison had confiscated and never returned his hearing aids, the district court erred in granting summary judgment to defendants on the prisoner's Eighth Amendment claim).

Marbet's Eighth Amendment deliberate indifference claim against Letizio and Huner is

not plausible as pled. The only allegation against these Defendants is that they failed to provide
Marbet adequate medical care following his "multiple requests/pleas" for replacement hearing
aids. (Compl. at 3, 6, 12.) However, Marbet does not specify to whom his multiple requests for
hearing aids were made, nor does he provide any detail as to when or how his multiple requests
were made. Rather, the Complaint suggests that only one phone call was made to each of Letizio
and Huner by Dr. Kaminski on September 3, 2022. (*Id.* at 10.) Moreover, although Marbet
avers that he was unable to participate in certain activities because "he could not hear call-outs"
from prison staff, he does not specify how long this occurred or whether his alleged inability to
participate continued indefinitely. (*Id.* at 6-7.) The allegations of the Complaint are thus
undeveloped and vague. It is not apparent from the Complaint that Letizio and Huner have
refused indefinitely to provide Marbet with replacement hearing aids. Notably, the Complaint
does not seek the provision of hearing aids but merely seeks monetary relief indicating that
Marbet may have already received replacement hearing aids. (*Id.* at 13.)

Marbet has not provided any nonconclusory allegations to support a plausible inference
that Letizio and Huner intentionally and indefinitely disregarded his request for replacement
hearing aids, unreasonably delayed necessary treatment based on a non-medical reason, or
prevented him from receiving treatment. *See, e.g., Fate v. Goord*, No. 11-7493, 2012 WL
3104884, at *7 (S.D.N.Y. 2012) (two-month delay in receiving hearing aids did not constitute
deliberate indifference even though inmate lost weight and became depressed and scared because
he was unable to hear meal times being called out over the loudspeaker); *Alster v. Goord*, 745 F.
Supp. 2d 317, 334-35 (S.D.N.Y. 2010) (inmate's receipt of uncomfortable hearing aids that lack
certain features and a delayed distribution of hearing aid batteries did not constitute deliberate
indifference); *but see*, *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 413 (S.D.N.Y.), *on
reconsideration*, 452 F. Supp. 2d 328 (S.D.N.Y. 2006) (fourteen-month delay in replacing

18

inmate's hearing aid demonstrated deliberate indifference to treating inmate's serious medical condition).

"Deliberate indifference requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse*, 182 F.3d at 197 (cleaned up). Letizio and Huner's actions, or inactions, as pled by Marbet do not meet this standard. Marbet simply does not allege sufficient facts to push his claim from possible to plausible. *See Iqbal*, 556 U.S. at 678 (explaining that legal conclusions and "unadorned, the-defendant[s]-unlawfully-harmed-me accusation[s]" are insufficient to state a claim); *Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."). Accordingly, Marbet's deliberate indifference claims against Letizio and Huner will be dismissed without prejudice.

## C. State Law Claims

To the extent Marbet seeks to assert negligence claims under state law, he has not pled an independent basis for the Court's jurisdiction over those claims.[11] District courts may exercise jurisdiction over cases raising claims exclusively under state law if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which means that "unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and

---

[11] Because the Court has dismissed Marbet's federal claims, the Court will not exercise supplemental jurisdiction over any state law claims.

*Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co.*, 800 F.3d at 105 ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp.*, 547 U.S. at 342 n.3)). Marbet does not plead the citizenship of any party to this suit. (*See* Compl. at 4-5.) Since the Complaint fails to allege a basis for diversity jurisdiction, any state law negligence claims will be dismissed without prejudice for lack of jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Marbet's Complaint in part with prejudice and in part without prejudice. Marbet's claims against the DOC and his claims against the Defendants in their official capacities will be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b). Marbet's claims based on the search of his cell, the loss of non-legal personal property, the handling of grievances, and the failure to investigate the loss of property will also be dismissed with prejudice. He will not be given leave to amend these claims because the Court concludes that amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

All other federal claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(A)(b)(1) for failure to state a claim. All state law claims will be dismissed without prejudice for lack of subject matter jurisdiction. Marbet will be given an opportunity to correct the defects in his claims by filing an amended complaint as to any claims dismissed without

20

prejudice. Any amended complaint must clearly describe the factual basis for his claims and how each defendant he names was personally involved in the alleged denial of his rights. Marbet may not reassert a claim that has already been dismissed with prejudice. The Court will also deny without prejudice as premature Marbet's request for the appointment of counsel.[12]

An appropriate Order follows, which provides further instruction about amendment.

**BY THE COURT:**

**KAI N. SCOTT, J.**

---

[12] Marbet's request for the appointment of counsel (*see* Compl. at 13) is premature at this stage of the litigation because his case has not yet passed the screening stage under 28 U.S.C. § 1915A. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (before exercising discretion to appoint counsel "the district court must consider as a threshold matter the merits of the plaintiff's claim"). The Court will deny Marbet's request without prejudice. Marbet may renew his request after any amended complaint, if he files one, has been screened by the Court. If Marbet chooses to file a renewed request, he should do so by motion and in accordance with the factors set forth by the United States Court of Appeals for the Third Circuit in *Tabron*.

21